Aksana M. Coone, Esq. (SBN 190125)
LAW OFFICES OF AKSANA M. COONE
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9650
Facsimile: (310) 954-9008
Email: aksana@coonelaw.com

Attorneys for Plaintiff,
ISAURA JAIMES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAURA JAIMES<br><br>Plaintiffs,<br><br>Vs.<br><br>VIKING RIVER CRUISES, INC. d/b/a VIKING, VIKING OCEAN CRUISES II LTD, and DOES 1-10,<br><br>Defendants. | Case No.: 2:25-cv-11737<br><br>**COMPLAINT FOR DAMAGES FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL**<br><br>Filed: December 10, 2025<br><br>Judge:<br>Magistrate: |

COMES NOW the plaintiff, ISAURA JAIMES (hereinafter "Plaintiff") and for a cause of action against defendants, VIKING RIVER CRUISES, INC. d/b/a VIKING, VIKING OCEAN CRUISES II LTD, and DOES 1-10 complains and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action seeking damages in excess of $75,000, exclusive of interest, costs, and attorney's fees between citizens of different States and foreign countries. Federal subject matter jurisdiction arises under and is by virtue of diversity citizenship pursuant to 28 U.S.C. § 1332. The action also arises under

1  maritime law such that the Court has admiralty jurisdiction under 28 U.S.C. § 1333 and the general maritime law of the United States.

2. Venue is proper in this District pursuant to 28 U.S.C § 1391(b) because Defendant VIKING RIVER CRUISES, INC. d/b/a VIKING is a California corporation with its principal place of business at 5700 Canoga Avenue, Suite 200, Woodlands Hills, California 91367.  From this location, Defendant VIKING RIVER CRUISES, INC. d/b/a VIKING, and, on information and belief, Defendant VIKING OCEAN CRUISES II LTD, conduct their worldwide cruise operations under the singular brand name "Viking," as part of a conglomerate of affiliated companies that often present themselves to the public through the generic trade name "Viking."

3. Defendant VIKING OCEAN CRUISES II LTD, on information and belief, at all times herein material, personally and through its agents, purposefully directed activities at the State of California and this District and deliberately availed itself of the privileges of conducting business here. Defendant operated and carried on a business venture in California, maintained offices, employees, and agents in this State, and engaged in substantial and continuous commercial activity within California and this District.  Defendant's foreign incorporation is a matter of form only and does not reflect the locus of its real-world operations, which are centered in California.  Defendant's California-based contacts are continuous, systematic, and substantial, rendering the exercise of personal jurisdiction in this forum proper and consistent with due process.  To the extent Defendant disputes these jurisdictional facts, Plaintiff is entitled to jurisdictional discovery, as evidence concerning Defendant's internal operations, corporate control, and decision-making resides uniquely within Defendant's possession, custody, and control.

/ / /

/ / /

# THE PARTIES

4. At all times herein material, Plaintiff was and is a resident and citizen of the State of Florida.

5. At all times herein material, Defendant VIKING RIVER CRUISES, INC. d/b/a VIKING was and is a for profit California corporation (entity number: 2221662) with its principal place of business and worldwide headquarters in Woodland Hills, Los Angeles County, California.

6. At all times herein material, Defendant VIKING OCEAN CRUISES II LTD, purported to be one of the carriers of the vessel *Viking Jupiter*, is a Bermuda company that, on information and belief, maintains its principal place of business and worldwide headquarters in Woodland Hills, Los Angeles County, California, from which it conducts substantial commercial activities within California, and the United States as a whole, and directs, controls, and coordinates substantial and material aspects of its cruise operations, including corporate governance, marketing and sales directed to U.S. passengers, passenger relations, risk management and litigation support, accounting and finance, and formulation of policies affecting passenger safety aboard its vessels, including the *Viking Jupiter*.

7. Defendant VIKING OCEAN CRUISES II LTD previously registered to do business in California under entity number 4035597 and, although its current status with the California Secretary of State is listed as "Forfeited – FTB," continues to maintain a designated agent for service of process in California and to file annual Statements of Information. Defe-10000ndant VIKING OCEAN CRUISES II LTD may be served with due process by serving its registered agent, Corporation Service Company, doing business in California as CSC-Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

/ / /

8. At all times herein material, Defendants VIKING RIVER CRUISES, INC. d/b/a VIKING and VIKING OCEAN CRUISES II LTD (hereinafter collectively referred to as "Viking" or "Defendants") are common carriers operating under a single enterprise named "Viking" and engaged in the business of marketing, selling and operating a cruise line and providing cruise vacations to passengers for compensation on ships that sail out of various foreign and U.S. ports.

9. The full extent of the facts linking the fictitiously designated defendants, Does 1-10, with the causes of action alleged herein are unknown to Plaintiff, and the true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise of Does 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues said defendants by such fictitious names. Plaintiff is informed and believes that each of the defendants designated herein as a "Doe" is negligently, gross negligently, wantonly, recklessly, tortuously and unlawfully responsible in some manner for the events and happenings herein referred to, and/or is strictly liable in tort for injuries and damages with respect to Plaintiff as herein alleged. Plaintiff will hereafter ask leave of Court to amend this Complaint to show said defendants' true names and capacities and to state the manner in which each fictitious defendant is so responsible when the same have been ascertained.

10. Plaintiff is informed and believes and thereon alleges that Defendants and Does 1-10, and each of them, were at all times material herein the agent, employee and/or joint venturer of their co-defendants and acted within the course and scope of such agency, employment and/or joint venture and with the permission and consent of, and their actions being ratified by, the other Defendants.

/ / /

/ / /

## COUNT I - NEGLIGENCE, GROSS NEGLIGENCE, CARELESSNESS, WANTONNESS, and RECKLESSNESS AGAINST ALL DEFENDANTS

11. Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs 1-10, and alleges as follows.

12. On or about December 11, 2024, and at all times material hereto, Defendants owned, managed, operated, maintained, supervised, inspected, and/or controlled the ocean-going passenger vessel known as *Viking Jupiter* ("Vessel"), which was operating on navigable waters and the high seas. The *Viking Jupiter* is a vessel flagged in Norway.

13. On or about December 11, 2024, Plaintiff was a fare-paying passenger on the Vessel.

14. Prior to the departure date, Plaintiff purchased from Defendants a cruise package including a 17-night "South America & The Chilean Fjords" voyage aboard the Vessel, together with air travel from Miami, Florida to Santiago, Chile and a return flight from Buenos Aires, Argentina to Miami (the "Subject Cruise"). The Subject Cruise sailed to various scheduled exotic ports including in Chile, Argentina, the Falkland Islands, and Uruguay.

15. At all times herein material, Defendants were engaged in the business of providing cruise vacation experiences to the public. The experience of visiting various ports of call is the *sine qua non* of the cruises sold and advertised by Defendants, including the Subject Cruise. Defendants advertised, marketed, and promoted these cruises, including the Subject Cruise, to prospective passengers and Plaintiff, specifically emphasizing the ports-of-call to entice the public and Plaintiff to purchase their cruise packages.

16. At all times herein material, Defendants, as the owners and/or operators of the Vessel, and their agents and employees, owed Plaintiff a nondelegable duty to exercise reasonable care under the circumstances to avoid causing her personal injury. The risk-creating condition at issue was peculiar to

the maritime context and arose during the embarkation and/or disembarkation of passengers from the Vessel. This nondelegable duty included the duty to provide safe ingress to and egress from the Vessel.

17. At all times herein material, Defendants and their agents, employees and crew, had a further duty to warn Plaintiff of any dangers that were known or could have been known to them, by reasonable inspection.

18. On or about December 11, 2024, while the Vessel was docked in the port of Buenos Aires, Argentina for a scheduled port call, Plaintiff attempted to disembark the Vessel via the steep metal gangway provided by Defendants. The gangway, which was the sole means for disembarkation, failed to provide a safe walkway and lacked appropriate handrails extending the full length of the ramp; instead, the handrails terminated prematurely, leaving a short metal ramp descending onto a wooden two-step riser. These wooden steps were grossly inappropriate, featuring irregular and non-uniform riser heights and tread widths, including an excessively narrow first step, in violation of internationally accepted standards requiring uniform risers and minimum tread depth, and they further contained unpermitted open risers, lacked any handrails for support, and were wobbly and unstable in construction. No warning signs were posted, and Defendants neither verbally warned Plaintiff of these hazardous conditions nor offered assistance, despite her being visibly elderly, infirm, and using a cane. As Plaintiff attempted to walk down the wooden steps, the combination of the steps' instability, narrow tread providing insufficient landing surface, lack of any handrail, and overall unsafe configuration caused her to fall and suffer severe injuries, including a fractured right femur requiring open reduction and internal fixation, followed by complications including cardiac arrest with resuscitation-related rib fractures and subsequent wound infection necessitating additional nursing care and physical therapy. After Plaintiff's fall, Defendants placed a yellow caution sign at the base of the gangway and replaced the wooden steps

with a blue angled ramp.

19. On or about December 11, 2024, Defendants, through the negligent, grossly negligent, careless, wanton, and reckless acts and omissions of their agents, employees, and crew, breached their duty of care to Plaintiff by committing the following acts and/or omissions, each constituting gross negligence and a reckless disregard for passenger safety, including but not limited to:

    a. Allowed the Vessel to be in noncompliance with applicable safety regulations relating to embarkation and disembarkation of passengers, including without limitation:

        i. The Norwegian Maritime Authority Regulation 507, requiring that gangways must comply with ISO standard No. 7061.

        ii. The Safety of Life at Sea Convention ("SOLAS"), regulation II-1/3-9, MSC.1/Circ.1331, and regulation III/20.7.2 relating to means of embarkation on and disembarkation from ships, which mandates that gangways or other means of disembarkations must be inspected and maintained monthly to ensure they are safe and in a suitable condition.

        iii. Other acceptable safety standards of the International Maritime Organization (IMO) and the American Society for Testing and Materials (ASTM) for maritime walking surfaces, including ASTM F1166-7, as well as the Uniform Building Code and the International Building Code requiring proper handrails, and uniform riser heights and tread widths on all steps, by providing passengers with a gangway to utilize for disembarkation that was unsafe and irregular in design, all in violation of applicable safety standards.

///

b. failed to provide Plaintiff with a reasonably safe means or method of egress from the Vessel;

c. failed to warn Plaintiff of an unreasonably dangerous and hazardous condition upon the gangway and the dangers involved in disembarking the Vessel;

d. failed to assist an elderly and infirm passenger down the gangway;

e. failed to provide passengers with a safer alternative method for disembarkation;

f. failed to adequately modify, inspect, and/or properly maintain and operate the gangway;

g. failed to utilize reasonably safe disembarkation procedures;

h. failed to adequately monitor and/or supervise the disembarkation off of the Vessel, as it occurred, to ensure it was done in a safe manner;

i. created an unsafe and foreseeably hazardous condition by utilizing the subject gangway and riser steps under the conditions present on the day of the incident;

j. created an unsafe and foreseeably hazardous condition by utilizing unsafe disembarkation procedures on the day of the incident;

k. failed to provide proper and/or sufficient instructions to passengers so that passengers, including Plaintiff, had a reasonably safe means of ingress and egress to and from the Vessel;

l. failed to investigate and ascertain the cause of prior similar incidents so as to take measures to prevent their reoccurrence and/or eliminate the hazards, and more particularly Plaintiff's incident and subsequent injury;

m. failed to investigate, screen, select, and retain the services of its crew, employees, servants, and agents to ensure the Vessel disembarkation operation was being conducted in a safe manner by

a competent crew;

n. failed to properly train, instruct and supervise its crew and employees to properly maintain, inspect, and operate the gangway and conduct safe disembarkation operations;

o. failed to promulgate and/or enforce adequate policies and/or procedures regarding inspecting and/or monitoring and/or maintaining the subject gangway in a reasonably safe condition;

p. failed to promulgate and/or enforce proper and adequate policies, protocols, and procedures to ensure disembarkation operations were being conducted in a safe manner and are supervised as they occur;

q. failed to promulgate and/or enforce adequate policies and/or procedures to provide sufficient warnings, instructions, and/or assistance to allow passengers, including Plaintiff, to have a reasonably safe means or method of egress from the vessel; and

r. In other manners expected to be discovered during the course of ongoing investigation and discovery.

20. At all times herein material, Defendants had exclusive control of the Vessel and the gangway utilized in the port of Buenos Aires, Argentina.

21. At all times herein material, Defendants' conduct fell outside the range of ordinary care for the activity of disembarking passengers. Defendants increased the risk of harm beyond that inherent in the activity and acted in reckless disregard for the rights and safety of passengers, including Plaintiff. Defendants' acts and omissions were committed recklessly and with knowledge that serious injury, particularly to elderly and infirm passengers using the gangway, would probably result, and therefore constitute gross negligence.

22. To the extent notice of any danger is required to be alleged, which Plaintiff denies, Plaintiff alleges Defendants knew of and/or created the foregoing dangerous and unsafe conditions that caused Plaintiff's injuries and

did not correct them, or the conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care, knew of them or should have learned of them and corrected them and/or warned Plaintiff of them. Insofar as it relates to conditions that Defendants did not create, if any, Defendants' knowledge was or should have been acquired through maintenance and inspection of the Vessel and the gangway, and/or through prior incidents involving passengers injured in similar manners aboard its fleet of vessels, and/or from their monitoring and supervising of their employees and crew.

23. As a direct and legal result of the incident alleged herein and the negligence, gross negligence, carelessness, wantonness and recklessness of Defendants and Does 1-10, and each of them, Plaintiff was hurt and injured her health, strength and activity, suffered severe injuries to her body, including but not limited to fractured right femur requiring open reduction and internal fixation, followed by complications including cardiac arrest with resuscitation-related rib fractures and subsequent wound infection necessitating additional nursing care and physical therapy, and shock and injury to her nervous system and person, all of which have caused and continue to cause mental, physical and emotional pain and suffering, disability, loss of enjoyment of life, inconvenience in the normal pursuits and pleasures of life, humiliation and embarrassment to Plaintiff. Plaintiff is informed and believes and thereupon alleges that some or all of her injuries will result in permanent damages, disability and pain and suffering, causing general damages to Plaintiff in an amount within the jurisdictional requirements of this court.

24. As a further direct and legal result of the incident alleged herein and the negligence, gross negligence, carelessness, wantonness and recklessness of Defendants and Does 1-10, and each of them, it was necessary for Plaintiff to receive medical care and treatment, and Plaintiff did sustain an expense for such medical treatment, care, hospitalization, medicines, and for other and further

medical and incidental care, and will require to do so in the future. Plaintiff alleges the cost of the medical care and treatment, past and future, and other special damages according to proof at trial.

### PRAYER

WHEREFORE, Plaintiff ISAURA JAIMES prays for damages against Defendants, and each of them, as follows:

1. For general damages, according to proof;
2. For medical expenses past and future according to proof;
3. For other special damages according to proof;
4. For prejudgment interest;
5. For costs of suit; and
6. For other such relief as the Court may deem proper.

Dated: December 10, 2025          **LAW OFFICES OF**
                                  **AKSANA M. COONE**

                                  By:  */s/ Aksana M. Coone*
                                  Aksana M. Coone, Esq.
                                  Attorneys for Plaintiff,
                                  ISAURA JAIMES

### DEMAND FOR JURY TRIAL

Plaintiff, ISAURA JAIMES, hereby demands trial by jury of the above-captioned matter.

Dated: December 10, 2025          **LAW OFFICES OF**
                                  **AKSANA M. COONE**

                                  By:  */s/ Aksana M. Coone*
                                  Aksana M. Coone, Esq.
                                  Attorneys for Plaintiff,
                                  ISAURA JAIMES